**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **CRIMINAL CASE NO. PWG-13-623** |
| | * | **(Civil Case No.: PWG-15-634)**[1] |
| **CHRISTOPHER WALTER PALMER** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

On November 6, 2013, Christopher Palmer was charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and 28 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. *See* Indict., ECF No. 1. On November 8, 2013, Palmer sold crack cocaine to an undercover law enforcement officer in exchange for three machine guns. Plea Agr. Sealed Suppl. 10–11, ECF No. 96-1; Re-Arraignment Trans. 31:16–18, 32:12–15, ECF No. 96-2. On April 24, 2014, Palmer pleaded guilty to a two-count Superseding Information which included the original § 846 charge, as well as possession of a machine gun, pursuant to 18 U.S.C. § 922(o)(1). Plea Agr. 1, ECF No. 47. Palmer was sentenced to ten years of imprisonment and five years of supervised release. Jgmt., ECF No. 81.

Palmer now brings a motion under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence on the basis of ineffective assistance of counsel.[2] Def.'s Mot., ECF No. 85. First, Palmer alleges that ineffective assistance of counsel rendered his guilty plea involuntary on

---

[1] The ECF numbers cited herein refer to the documents filed in Palmer's criminal case.
[2] This motion is fully briefed. The Government filed an opposition, Opp'n, ECF No. 96, and I directed Palmer to reply by November 16, 2015, *see* ECF No. 98. On November 9, 2015, Palmer moved to extend his deadline to file a reply. *See* ECF No. 100. Although I granted Palmer's request and extended his deadline to February 26, 2016, *see* ECF No. 101, he has not filed a reply. A hearing to decide this motion is not necessary. *See* Loc. R. 105.6.

1

the grounds that his attorney (1) failed to present him with alternative options to accepting the plea agreement and failed to notify him of prosecutorial defects; (2) was unfamiliar with the facts of his case; and (3) failed to advise him of his right to a speedy trial or of the Sixth Amendment rights he would surrender with the entry of his guilty plea. *Id.* at 1–2. Second, Palmer alleges ineffective assistance of counsel on the basis that his attorney failed to protect his right to a speedy trial. *Id.* at 5. Because the record does not support Palmer's claims that his counsel was ineffective in either respect, I will deny his motion to vacate, set aside, or correct his sentence.

## I.     STANDARD

28 U.S.C. § 2255(a) permits a prisoner to file a motion to vacate, set aside, or correct his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States . . . ." The prisoner must prove his case by a preponderance of the evidence. *Brown v. United States*, Civil No. DKC-10-2569 & Crim. No. DKC-08-529, 2013 WL 4562276, at *5 (D. Md. Aug. 27, 2013). If the court finds for the prisoner, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Although "a *pro se* movant is entitled to have his arguments reviewed with appropriate deference," the court may summarily deny the motion without a hearing "if the § 2255 motion, along with the files and records of the case, conclusively shows that [the prisoner] is not entitled to relief." *Brown*, 2013 WL 4562276, at *5 (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978); 28 U.S.C. § 2255(b)).

To prevail on a claim of ineffective assistance of counsel as the alleged constitutional violation,

> a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984). In making this determination, there is a strong presumption that counsel's conduct

> was within the wide range of reasonable professional assistance. *Id*. at 689; *see also Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992). Furthermore, the petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297. "If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297 (citing *Strickland*, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court may not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . *Strickland* if the 'result of the proceeding was fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhard v. Fretwell*, 506 U.S. 364, 369 (1993)).

*United States v. Lomax*, Civil No. WMN-13-2375 & Crim. No. WMN-10-145, 2014 WL 1340065, at *2 (D. Md. Apr. 2, 2014). "When a petitioner alleges ineffective assistance of counsel following the entry of a guilty plea, he 'must show that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Fabian*, 798 F. Supp. 2d 647, 670–71 (D. Md. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## II. DISCUSSION

Palmer states that his motion to vacate should be granted on the basis of ineffective assistance of counsel by his attorney, Andrew Szekely. *See* Def.'s Mot. 1. Palmer states that "his plea was not made intelligently, voluntarily, and was made without sufficient awareness of the relevant circumstances." *Id.* Furthermore, he states that

> Defendant's counsel deceitfully obscured the facts of this matter from Defendant. Counsel coerced Defendant into accepting a plea as his only option in the matter. Counsel never discussed any legal options with Defendant including any other suppressive motions, the insufficiency of the indictment and affidavits supporting the warrants, his right to trial by jury, his right to a speedy trial and the relevant statutes that prevent prolonged pretrial incarceration, prosecutorial defects, affirmative defenses and other statutory claims to challenge the indictment.
>
> Defendant was assigned counsel who was ineffective, counsel was never familiar with the facts of the matter, instead of intelligently discussing the matter and options to Defendant, counsel attempted to convince Defendant that he had no other options other then [sic] going with plea offer. Counsel did not provide

3

>  guidance to Defendant on his rights and his legal options in this matter, instead council [sic] convinced against [Palmer's] better judgment that he had no options but to take the plea.

*Id.* at 1–2. He separately alleges that "counsel did not protect Defendant's rights regarding his constitutionally protected right to a speedy trial. The extraordinary delay and oppressive incarceration of [D]efendant in this matter has prejudiced Defendant and permitted the [G]overnment to strengthen their case." *Id.* at 5. I will read Palmer as making two claims of ineffective assistance of counsel: (A) with respect to the voluntariness of his guilty plea and (B) with respect to the protection of his right to a speedy trial.

### A. Voluntariness of the Plea

Palmer alleges that his guilty plea was made involuntarily and "without sufficient awareness of the relevant circumstances." *Id.* at 1. His three bases for this allegation are that Szekely (1) failed to present Palmer with legal options and notify Palmer of prosecutorial defects; (2) was unfamiliar with the facts of Palmer's case and coerced his acceptance of the plea agreement; and (3) did not advise Palmer of his right to a speedy trial or of the Sixth Amendment rights he would surrender with the entry of his guilty plea. *Id.* at 1–2. None of these allegations provide adequate support for Palmer's claim of ineffective counsel.

Federal Rule of Criminal Procedure 11(b)(2) requires a court to ensure a guilty plea is made voluntarily before accepting it. "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *U.S. v. Fisher*, 711 F.3d 460, 464 (4th Cir. 2013) (quoting *Hill*, 474 U.S. at 56). The *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58.

>  In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence . . . . The

> second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 58–59.

### 1. Failure to Discuss Legal Options or Prosecutorial Defects

Palmer's initial two bases for his claim that his plea was involuntary fail to satisfy the prejudice prong of the *Strickland* test. First, he states Szekely "deceitfully obscured the facts of the matter" from Palmer by not discussing "legal options" such as suppressive motions, affirmative defenses, and "other statutory claims." Def.'s Mot. 1–2. He states Szekely "convinced [him] against his better judgment that he had no options but to take the plea." *Id.* at 2. As *Hill* explained,

> the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. . . . [T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."

*Hill*, 474 U.S. at 59–60 (quoting *Strickland*, 466 U.S. at 695).

Szekely's actions did not prejudice Palmer. Palmer received a sentence of ten years' imprisonment as a result of pleading guilty to 21 U.S.C. § 846, conspiracy to distribute and possession with intent to distribute, and 18 U.S.C. § 922(o)(1), possession of a machine gun. *See* Jgmt. However, he admitted to having sold crack cocaine to an undercover officer in exchange for three machine guns. Plea Agr. Sealed Suppl. 10–11; Re-Arraignment Trans. 31:16–18, 32:12–15. Had Palmer not pled guilty to those charges, "the Government would have sought a Superseding Indictment that included a charge for 18 U.S.C. § 924(c)(1)(B)(2) (possession of a machine gun during a narcotics trafficking crime), which carries a mandatory minimum of thirty

years' imprisonment." Opp'n 2. The undercover officer with whom Palmer made the transaction would, in all likelihood, have testified at such a trial. *See id.* 7. Palmer does not indicate what "legal options" Szekely failed to present to him. *See* Def.'s Mot. 1–2. He states that Szekely failed to discuss "suppressive motions," "affirmative defenses" or "other statutory claims" but does not allege how the failure to discuss any particular motion or defense affected his decision to plead guilty, much less whether such a motion or defense would have produced a favorable outcome at trial. *Id.*

In addition, Palmer fails to allege any facts supporting his allegation that Szekely never discussed "the insufficiency of the indictment and affidavits supporting the warrants" or "prosecutorial defects." Def.'s Mot. 1–2. He does not state what insufficiencies or defects might have existed. *See* Def.'s Mot. Thus, Palmer has failed to demonstrate that he was prejudiced by Szekely's failure to advise him of prosecutorial defects or to discuss legal options.[3]

   2.   *"Unfamiliarity with Facts" and Coercion*

Palmer's second basis for his claim that his plea was involuntary does not satisfy the *Strickland* test because it is contradicted by the Rule 11 colloquy. Palmer states that Szekely "was never familiar with the facts of the matter." Def's Mot. 2. However, when asked at his re-arraignment whether he was satisfied with Szekely's representation, he responded affirmatively. Re-Arraignment Trans. 9. "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields*, 956 F.2d at 1299. If a petitioner "presents no evidence that suggests his representations during his plea were untruthful or involuntary, [] he is therefore rightly bound by his sworn statements." *Id.*; *see also*

---

[3] Because Palmer has failed to demonstrate that he suffered prejudice as a result of Szekely's representation, it is not necessary to consider whether Szekely's representation was ineffective under the first prong of the *Strickland* test. *See Fields*, 956 F.2d at 1297.

6

*United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated-'permit[ting] quick disposition of baseless collateral attacks.'") (alteration in original) (citations omitted). Palmer has provided no evidence to suggest that this statement—that he was satisfied with Szekely's representation—was untruthful or involuntary.

Palmer's assertion that Szekely "coerced Defendant into accepting a plea as his only option" is similarly contradicted by the Rule 11 colloquy. *See* Def.'s Mot. 1; Re-Arraignment Trans. 18. At his re-arraignment, I asked Palmer if his decision to plead guilty was of his own free will; he answered in the affirmative. Re-Arraignment Trans. 18:2–5. When I asked him whether anyone had tried to force him against his will to plead guilty, he answered no. *Id.* at 18:6–8. Further, when I asked Palmer if anyone had tried to bring pressure on one of his family members or loved ones to force Palmer to plead guilty, he responded no. *Id.* at 18:9–12. Because Palmer has not alleged that these statements themselves were untruthful or involuntary, he is bound by them. *See Fields*, 956 F.2d at 1299.

    3. *Surrendered Sixth Amendment Rights*

Palmer alleges Szekely never discussed "his right to trial by jury, his right to a speedy trial and the relevant statutes that prevent prolonged pretrial incarceration . . . ." Def.'s Mot. 1–2. He states that "[c]ounsel did not provide guidance to Defendant on his rights," and that he was "never intelligently made aware of the rights he was relinquishing by pleading guilty." *Id.* at 2. At his re-arraignment, I thoroughly described the rights Palmer would waive by pleading guilty,

including his right to a jury trial.  Re-Arraignment Trans. 19–23.  Palmer stated he understood. *Id.* at 23.  This explanation is sufficient to correct any misstatement by Szekely (to the extent any misstatement actually was made) with respect to Palmer's right to a jury trial.  *See United States v. Foster*, 68 F.3d 86, 88–89 (4th Cir. 1995) ("[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.").  In regards to Szekely's alleged failure to protect Palmer's right to a speedy trial or to advise him of the fact that he had such a right, Palmer does not allege that this failure prejudiced his decision to enter his guilty plea.  *See* Def.'s Mot.  His allegation that he was generally prejudiced by Szekely's failure to protect his right to a speedy trial will be discussed below.

For these reasons, I find that Palmer has failed to demonstrate that his "counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness," *see Lomax*, 2014 WL 1340065, at *2 (citing *Strickland*, 466 U.S. at 687–91), and overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  His motion to vacate based on ineffective assistance of counsel with respect to his acceptance of the plea agreement and his subsequent sentence is denied.

**B.  Speedy Trial**

Palmer's final claim of ineffective assistance of counsel is based on Szekely's alleged failure to protect his right to a speedy trial:

> The extraordinary delay and oppressive incarceration of [D]efendant in this matter has prejudiced Defendant and permitted the [G]overnment to strengthen their case.  The purpose of [18 U.S.C. 3161] and the Sixth Amendment are to ensure a

speedy trial of a criminal defendant. The [G]overnment has harmed Defendant by oppressively incarcerating Defendant and intentionally delaying trial due to the incompetence of the prosecution team.

Def.'s Mot. 5. In regards to the alleged violation of the Speedy Trial Act, 18 U.S.C. 3161, Palmer expressly agreed to "waive any rights under the Speedy Trial Act" in his plea agreement. Plea Agr. Sealed Suppl. 16. He stated in his Rule 11 colloquy that he understood he had done so. Re-Arraignment Trans. 28. He does not allege that this particular Rule 11 statement was untrue or involuntary. *See Fields*, 956 F.2d at 1299. Therefore, he effectively waived his rights under the Speedy Trial Act.

Even if Palmer had not waived his rights, his allegation that his "oppressive incarceration" prejudiced him lacks merit because he offers no facts showing such prejudice. *See* Def.'s Mot. 5. To show prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result would have been different. *Chisholm v. Warden of Tyger River Corr. Inst.*, No. RBH-15-311, 2016 WL 128149, at *3 (D.S.C. Jan. 12, 2016) (citing *Evans v. Smith*, 220 F.3d 306, 317 (4th Cir. 2000)). The court in *Chisholm* found the petitioner failed to meet *Strickland's* standard for prejudice when his counsel failed to file a speedy trial motion, and evidence recovered two years after the petitioner's indictment was produced and admitted at trial. *Chisholm*, 2016 WL 128149, at *3-4 (citing *Strickland*, 466 U.S. at 687). The evidence recovered two years after Chisholm's indictment was a DNA report from a rape kit that led to Chisholm's conviction. *Id.* The court rejected Chisholm's ineffective counsel claim because "[n]otwithstanding the rape kit evidence tested two years after [Chisholm] was indicted, other overwhelming evidence of guilt was presented at [his] trial." *Id.*

Palmer does not even allege Szekely failed to file a speedy trial motion; rather, he vaguely alleges Szekely did not protect his right to a speedy trial. Def.'s Mot. 5. He does not

state with any specificity what Szekely did, or failed to do, that resulted in his allegedly "oppressive incarceration." *Id.* Palmer was arrested November 8, 2013 and pled guilty on April 24, 2014. *See* Plea Agr.; Re-Arraignment Trans. Szekely filed three pre-trial motions in December, 2013, which had the effect of tolling the Speedy Trial Clock. *See* ECF Nos. 32–34. Palmer does not allege any facts showing that, had Szekely not filed the pre-trial motions, the result of his case would have been different.[4]

For these reasons, Palmer's motion to vacate based on ineffective assistance of counsel with respect to the protection of his right to a speedy trial is denied.

### III.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 and 2255 provides that the court must "issue or deny a certificate of appealability when it enters a final order adverse to the petitioner." *Brown*, 2013 WL 4562276, at *10. This certificate "is a 'jurisdictional prerequisite' to an appeal from the court's order" that "may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Id.* (quoting 28 U.S.C. § 2253(c)(2) and citing *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007)). A prisoner makes this showing "[w]here the court denies a petitioner's motion on its merits . . . by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." *Id.* (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because Palmer has not shown that a reasonable judge "would find the court's assessment of the constitutional claim[] debatable or wrong," and therefore has not made a substantial showing that his Constitutional rights were denied, this Court will not issue a certificate of appealability. *See id.*; 28 U.S.C. § 2253(c)(2). *Miller-El*, 537

---

[4]    Having failed the "prejudice" prong of *Strickland*, the "performance" prong of the test need not be applied. *See Fields*, 956 F.2d at 1297.

U.S. at 336–38; *Slack*, 529 U.S. at 484. However, this ruling does not preclude Palmer from seeking a certificate of appealability from the Fourth Circuit. *See* 4th Cir. Loc. R. 22(b)(1).

## IV. CONCLUSION

For the reasons stated above, Palmer's motion to vacate, set aside, or correct sentence is DENIED.

## ORDER

Accordingly, it is this 27th day of July, 2016, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendant's motion to vacate in Criminal Case No. PWG-13-623, ECF No. 85, IS DENIED;

2. The Clerk SHALL FILE a copy of this memorandum opinion and order in Criminal Case No. PWG-13-623 and Civil Case No. PWG-15-634;

3. The Clerk SHALL MAIL a copy of this memorandum opinion and order to Defendant; and

4. The Clerk SHALL CLOSE Civil Case No. PWG-15-634.

/S/
Paul W. Grimm
United States District Judge

jef